1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE L. MARSH, | 1:10-cv-02353-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS CASE PROCEED ON PLAINTIFF'S CLAIM FOR DEPRIVATION OF OUTDOOR EXERCISE AGAINST DEFENDANTS ROHRANDANZ AND KANE FOR MONEY DAMAGES, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED |
| v. | |
| JERRY BROWN, et al., | |
| Defendants. | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |
| _____/ | |

## I.   RELEVANT PROCEDURAL HISTORY

Lawrence L. Marsh ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on December 8, 2010.  (Doc. 1.)  The Court screened the Complaint pursuant to 28 U.S.C. 1915A and entered an order on August 29, 2011, dismissing the Complaint for failure to state a claim, with leave to amend.  (Doc. 12.)  On January 18, 2012, Plaintiff filed the First Amended Complaint.  (Doc. 26.)  Five days later, on January 23, 2012, Plaintiff lodged a Second Amended Complaint, which was filed on December 21, 2012 and is now before the Court for screening. (Docs. 27, 30.)

///

1

1  **II.    SCREENING REQUIREMENT**

2          The court is required to screen complaints brought by prisoners seeking relief against a

3  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

4  court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

5  "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek

6  monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).

7  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

8  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a

9  claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

10         A complaint is required to contain "a short and plain statement of the claim showing that the

11  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

12  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

13  conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949

14  (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)).  While

15  a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences,"

16  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and

17  citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim

18  that is plausible on its face.'"  Iqbal, 556 U.S. at 679.  While factual allegations are accepted as true,

19  legal conclusions are not.  Id. at 678.  The mere possibility of misconduct falls short of meeting this

20  plausibility standard.  Id. at 679.

21  **III.   SUMMARY OF SECOND AMENDED COMPLAINT**

22         The events at issue in the Second Amended Complaint allegedly occurred at Pleasant Valley

23  State Prison (PVSP) in Coalinga, California; California Correctional Institution (CCI) in Tehachapi,

24  California; California Substance Abuse Treatment Facility (SATF) in Corcoran, California; and

25  North Kern State Prison (NKSP) in Delano, California, when Plaintiff was incarcerated at each of

26  those facilities.  Plaintiff names as defendants Jerry Brown (Governor of California), Igbanosa

27  (Medical Director at PVSP), Dr. Rohrandanz (Medical Doctor at PVSP), Cano (Correctional

28  Counselor II at PVSP), Lovell (Correctional Counselor I at PVSP), Kane (LVN at PVSP and NKSP),

1   Montoya (Correctional Counselor I at PVSP), Sing (LVN at SATF), and Dr. Genis (Medical Doctor
2   at NKSP).

3          Plaintiff bring claims for conspiracy, retaliation, inadequate medical care, failure to protect,
4   denial of access to the courts, denial of outdoor exercise, inadequate appeals process, and excessive
5   force.  Plaintiff's allegations, which are not entirely presented in chronological order, largely consist
6   of recitals of the elements of causes of action, supported by conclusory statements.  Plaintiff alleges
7   that the claims of the nine named defendants are related because they all conspired to retaliate
8   against him and deprive him of his constitutional rights.  Plaintiff's factual allegations follow.

9          Plaintiff, who suffers from diabetes, was incarcerated at PVSP when these events began in
10  2008.  Dr. Igbanosa called Plaintiff into his office and stated, "Dr. Rohrandanz asked me to talk to
11  you personally because you have not been taking your insulin injections to maintain your diabetes
12  because you say you can't take medications on an empty stomach and that Dr. Navasartian has
13  [discontinued] your boost [medication] ... until you are scheduled for reconstructive surgery on your
14  teeth and gums and you cannot chew regular food.  Well, you are in prison and the cost for
15  reconstructive surgery for inmates is not available at this time.  You say you have been using
16  exercise and diet to manage your diabetes for over thirty-five years before you came to prison,
17  because of your allergic reaction to insulin.  Both Doctor Rohrandanz and Navasartian can't see how
18  you can be allergic to something you have not tried, and I agree.  If you continue to require exercise
19  and diet to manage your diabetes, in prison you will die, because regular exercise is not an option
20  at this prison due to overcrowded and understaffed conditions and the lock downs they cause.  PVSP
21  is where your counselor has recommended you be housed, and if you remain noncompliant, he can
22  make PVSP your placement for the duration of your sentence.  I will not alter the objective Dr.
23  Rohrandanz or Dr. Navasartian see as a remedy for your non-compliance."  Second Amd Cmp, Doc.
24  30 at 6-7.)  Plaintiff contends that the course of treatment Dr. Rohrandanz and Dr. Navasartian chose
25  is medically unacceptable under the circumstances and Plaintiff, a minimum custody inmate, is
26  inappropriately housed in a maximum custody prison and could have been transferred to a minimum
27  level prison where adequate outdoor exercise is available if not for their conspiracy to punish
28  ///

Plaintiff for attempting access to the court.  Plaintiff also contends that Dr. Igbanosa, who is a supervisor, failed to stop the adverse actions of his subordinates.

LVN Kane deprived Plaintiff of all outdoor exercise for over 120 days, causing him to contract a staff infection, and also denied him his personal property and access to the law library. LVN Kane paused in front of Plaintiff's cell door in administrative segregation (Ad Seg) and stated to an officer assisting her, "This one we don't need to give meds, per Dr. Rohrandanz, who told me not to give him his medication, allow him out of this cell or [give him] access to his property or any books or other writing material, [only] food and showers until further notice."  LVN Kane caused Plaintiff's property to be confiscated, denied him outdoor exercise for over 120 days, and denied him access to the law library, which shut him out of court.

The following day, Correctional Counselor Cano had Plaintiff placed in Ad Seg in a cell with a very violent maximum security prisoner named Adolfo.  Adolfo took Plaintiff's special diet food and would not allow Plaintiff to occupy the lower bunk where Plaintiff was assigned.  Adolfo accused Plaintiff of being a snitch for telling about his sexual assault, pulled Plaintiff off the top bunk, and assaulted him, causing Plaintiff to be hospitalized with a fractured hip.

Correctional Counselor Lovell came into the Sensitive Needs Yard medical clinic and confronted Plaintiff, stating, "I need you to sign this statement so that I am not held responsible for whatever happened to you when you were housed on the general population yard.  After all you are the one who claims you were sexually assaulted, not me." After Plaintiff filed 602 appeals regarding recalculation of his credits, due to defendant Lovell refusing him a job comparable to his previous prison job in order to pay down his restitution, all 602's submitted were never returned or replied to. Defendant Lovell denied Plaintiff's numerous requests for recalculation of credits by having another inmate come to Plaintiff's bunk and state, "The Counselor asked me to tell you that filing 602's will only make your situation worse."  Second Amd Cmp at 10:24-25.

Correctional Counselor Montoya assaulted Plaintiff by hitting him with a clenched fist in a malicious or sadistic use of force which was not applied in good faith or in an effort to restore discipline, causing Plaintiff to be hospitalized with injuries.  Defendant Montoya then created a false
///

4

disciplinary report stating that Plaintiff had failed to respond to a direct order after he had called Plaintiff three times, but Plaintiff was hearing impaired and could not hear him.

A few days after Plaintiff returned from the hospital, defendant Mendoza ordered Plaintiff out of the law library, forcefully removed him, and filed a second disciplinary report claiming that Plaintiff was out of bounds, causing Plaintiff to lose 60 days of good time credit.

C/O Mendoza came into the gym barracks where Plaintiff was housed and had a conference with defendant Montoya, then called Plaintiff into the office. Plaintiff stated he did not want to come into the office with the person who had assaulted him. Then defendant Montoya sent an inmate to Plaintiff's bunk who stated, "The Counselor said that filing 602's will only made your situation worse." Second Amd Cmp at 12:26-27.

Defendants Montoya, Lovell, Kane, and Rohrandanz conspired to retaliate against Plaintiff by denying him all outdoor exercise necessary to manage his diabetes, causing Plaintiff's condition to worsen. Plaintiff's medical conditions include muscle weakness, hindering blood circulation, and high blood pressure and blood sugar, making Plaintiff more vulnerable to colds and other medical problems.

On or about July 28, 2010, Plaintiff suffered a diabetic stroke while seated in Dr. Navasartian's DDS office. Plaintiff woke up in the hospital after a seven-day diabetic coma and realized he was paralyzed on his left side, with right-side vision, hearing, speech, and balance impairment. Plaintiff was discharged back to the Sensitive Needs Yard under the care of Dr. Rohrandanz.

At the medical clinic, Dr. Rohrandanz's very humanitarian nurse confronted Plaintiff and said, "I am so relieved to see that you are ok. I am so sorry that it may have been my mistake that contributed to your stroke being as severe as it is. Dr. Rohrandanz told me to give you glucose because many of his patients suffer from low blood sugar. After I gave you gloucose your blood sugar spiked to over 615. I then realized that you suffered from high blood sugar and you were out cold so I could not cause you to throw up. Whatever you need just let me know personally and I will see that it is taken care of." Second Amd Cmp at 13:16-23.

///

On or about August 15, 2010, Plaintiff was transferred from PVSP to CCI.  A few days afterward, Plaintiff submitted a medical request and was seen within a week by Dr. Yin, who treated Plaintiff's severly painful earache.  Dr. Yin prescribed Plaintiff an earwax-removal kit.  After using the earwax-removal kit, Plaintiff returned to see Dr. Yin on a regular visit and informed the doctor that he no longer had an earache.  Plaintiff was tested for his hearing loss, and the test confirmed that he no longer needed the expensive hearing aid device that had been given him by Dr. Rohrandanz when Plaintiff requested an earwax-removal kit.  Plaintiff alleges that Dr. Rohrandanz chose a course of treatment that was medically unacceptable, for personal gain, causing Plaintiff to suffer further injury for more than two years.

Plaintiff alleges that Dr. Igbanosa, a supervisor, failed to intercede in Dr. Rohrandanz and Montoya's conspiracy to move plaintiff from "G" yard, a Special Needs Yard, to "E" yard in the general population, subjecting him to possible assault by other inmates.

After using inhumane methods of confinement to punish Plaintiff, Dr. Rohrandanz and Montoya conspired to have Plaintiff escorted to the Lieutenants office to talk on the phone with Montoya, who stated, "Your counselor has advised me that she will be putting you up for transfer to McFarland Community Correctional Facility.  I am faxing the Lieutenant another release for you to sign before you can be transferred."  Second Amd Cmp at 16:15-18.

### *Allegations Arising After this Case Was Filed on December 8, 2010*

Between approximately July 7, 2011 and November 7, 2011, LVN Kane acted under the direction of Dr. Genis and denied Plaintiff his medications to treat his diabetes.  Plaintiff was transported to NKSP for a medical evaluation and placed in the general population.  Plaintiff saw LVN Kane who told him "Let's get one thing straight.  Dr. Genis has talked with Dr. Rohrandanz at PVSP and we know all about your case.  If you do not take your insulin injections here you will spend the rest of your sentence in the reception unit where you will receive no outdoor exercise, no property, and no other out-of-unit privileges."  Second Amd Cmp at 15:19-23.

Plaintiff requests monetary damages, declaratory relief, preliminary and permanent injunctive relief, and attorneys fees and costs.

///

1    **IV.    PLAINTIFF'S CLAIMS**

2         The Civil Rights Act under which this action was filed provides:

3              Every person who, under color of [state law] . . . subjects, or causes
               to be subjected, any citizen of the United States . . . to the deprivation
4              of any rights, privileges, or immunities secured by the Constitution .
               . . shall be liable to the party injured in an action at law, suit in equity,
5              or other proper proceeding for redress.

6    42 U.S.C. § 1983. "Section 1983 . . .  creates a cause of action for violations of the federal

7    Constitution and laws." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997)

8    (internal quotations omitted).  "To the extent that the violation of a state law amounts to the

9    deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution,

10   Section 1983 offers no redress." Id.

11        **A.    <u>Rule 18 - Unrelated Claims</u>**

12        Plaintiff was advised in the Court's prior screening order that he is not allowed to include

13   multiple unrelated claims in a single filing.  "The controlling principle appears in Fed. R. Civ. P.

14   18(a) 'A party asserting a claim to relief as an original claim, counterclaim, crossclaim, or third-party

15   claim, may join, either as independent or alternate claims, as many claims, legal equitable, or

16   maritime, as the party has against an opposing party.' Thus multiple claims against a single party are

17   permissible, but Claim A against Defendant 1 should not be joined with unrelated Claim B against

18   Defendant 2. Unrelated claims against different defendants belong in different suits, not only to

19   prevent the sort of morass (a multiple claim, multiple defendant) suit produces, but also to ensure

20   that prisoners pay the required filing fees. The Prison Litigation Reform Act limits to 3 the number

21   of frivolous suits or appeals that any prisoner may file without the prepayment of the required fees.

22   28 U.S.C. § 1915(g).  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

23        Plaintiff attempts to relate all of the defendants and their actions by alleging that they all

24   entered into a conspiracy to retaliate against Plaintiff and deprive him of his constitutional rights.

25   However, as discussed below, Plaintiff fails to state a cognizable claim for conspiracy or retaliation

26   against any of the defendants.  Therefore, Plaintiff is left with multiple, largely unrelated claims.

27        Plaintiff must only pursue related claims in this action.  As discussed below, the Court finds

28   that Plaintiff states two cognizable claims which are unrelated: (1) Denial of outdoor exercise claim

7

against defendants Rohrandanz and Kane, and (2) excessive force claim against defendant Montoya. In light of the fact that the Court advised Plaintiff in the previous screening order that he should not allege unrelated claims in the amended complaint, the Court shall decide which of the unrelated claims Plaintiff shall proceed with in this action, and the remaining unrelated claim shall be dismissed. If Plaintiff wishes to pursue all of his claims, he must file a new, separate complaint addressing the dismissed unrelated claim.

### B.   Supervisory Liability - defendant Igbanosa

Plaintiff alleges that defendant Igbanosa, a supervisor, failed to stop the adverse actions of his subordinates. Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009). A supervisor may be held liable only if he or she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 633 F.3d 1191, 1197 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark County School Board of Trustees, 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997). Under section 1983, Plaintiff must demonstrate that each named defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934 (emphasis added).

Plaintiff has not demonstrated that defendant Igbanosa knew of adverse actions by subordinates constituting cognizable claims of constitutional violations. As discussed below, the Court finds only two cognizable claims, for denial of outdoor exercise and for excessive force. Plaintiff has not demonstrated that defendant Igbanosa knew of, participated in, or directed either of these violations  Therefore, to the extent that Plaintiff attempts to hold defendant Igbanosa liable based on supervisory liability, Plaintiff fails to state a claim.

### C.   Defendant Jerry Brown

Plaintiff names Jerry Brown, Governor of California, as a defendant. As discussed directly above, Plaintiff may not impose liability on Governor Brown as a supervisor under section 1983 on the theory of respondeat superior. Moreover, Plaintiff may not bring suit against the Governor of

the State of California in his official capacity, because "[t]he Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted).

The Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities. Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003). "Personal-capacity suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer, 502 U.S. at 25; Suever v. Connell, 579 F.3d 1047, 1060 (9th Cir. 2009). However, under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added). Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights. Iqbal, 556 U.S. at 677. In the Second Amended Complaint, Plaintiff did not allege any facts concerning personal actions by defendant Brown. Therefore, Plaintiff also fails to state a claim against Governor Brown in his individual capacity.

Thus, Plaintiff fails to state any claim against Governor Brown, and he must be dismissed from this action.

### D.    Allegations Arising After Complaint Was Filed

Plaintiff makes allegations in the Second Amended Complaint concerning events occurring after he filed the Complaint commencing this action. For example, Plaintiff alleges that between July 7, 2011 and November 7, 2011, LVN Kane acted under the direction of Dr. Genis and denied Plaintiff his medications to treat his diabetes. This action was filed on December 8, 2010.

Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). However, a party may only file a supplemental complaint with leave of court. Id. Here, Plaintiff has not requested, nor been granted, leave of court to file a supplemental complaint. The Court's prior screening order granting Plaintiff leave to amend

///

did not grant him leave to file a supplemental complaint.  Therefore, any of Plaintiff's claims arising after December 8, 2010 must be dismissed from this action.

### E.    Conspiracy

In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974).  A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Plaintiff alleges that all of the defendants conspired to violate his constitutional rights. However, Plaintiff has not alleged facts showing that any of the defendants entered into an agreement to violate his constitutional rights.  It is not enough to state that defendants "had a meeting of the minds" or "entered into an agreement," without alleging facts.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Therefore, Plaintiff fails to state a claim for conspiracy, and this claim must be dismissed.

### F.    Conditions of Confinement Claim - Denial of Exercise

Plaintiff alleges that defendant LVN Kane, under orders by Dr. Rohrandanz, deprived Plaintiff of outdoor exercise for 120 days, causing him to contract a staff infection.

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and the other subjective."

1    <u>Allen v. Sakai</u>, 48 F.3d 1082, 1087 (9th Cir. 2010) cert. denied, 514 U.S. 1065 (1995).  The objective

2    requirement is met if the prison official's acts or omissions deprived a prisoner of "the minimal

3    civilized measure of life's necessities.'" <u>Id.</u> (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)).

4    To satisfy the subjective prong, a plaintiff must show more than mere inadvertence or negligence.

5    Neither negligence nor gross negligence will constitute deliberate indifference.  <u>Farmer</u>, 511 U.S.

6    at 833, & n. 4; <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  The <u>Farmer</u> court concluded that

7    "subjective recklessness as used in the criminal law is a familiar and workable standard that is

8    consistent with the Cruel and Unusual Punishments Clause" and adopted this as the test for

9    deliberate indifference under the Eighth Amendment.  <u>Farmer</u>, 511 U.S. at 839-40.

10       Inmates have a constitutional right to outdoor exercise under the Eighth Amendment.

11   <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151-52 (9th Cir. 2010).  "'[S]ome form of regular outdoor

12   exercise is extremely important to the psychological and physical well being of the inmates.'" <u>Allen</u>,

13   48 F.3d at 1087 (quoting <u>Spain v. Procunier</u>, 600 F.2d 189, 199 (9th Cir. 1979)).  Thus, "[the]

14   deprivation of outdoor exercise [can] constitute cruel and unusual punishment." <u>Allen</u>, 48 F.3d at

15   1087.  While the temporary denial of outdoor exercise with no medical effects is not a substantial

16   deprivation, <u>May v. Baldwin</u>, 109 F.3d 557, 565 (9th Cir. 1997), in this Circuit, the deprivation of

17   regular outdoor exercise for a prolonged period, is unquestionably sufficient to meet the objective

18   requirement of the Eighth Amendment analysis.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1132-33 (9th Cir.

19   2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement);

20   <u>Allen</u>, 48 F.3d at 1086-88 (forty-five minutes of outdoor exercise per week for six weeks meets

21   objective Eighth Amendment requirement).  Regular outdoor exercise is necessary "unless inclement

22   weather, unusual circumstances, or disciplinary needs ma[k]e that impossible. <u>Spain</u>, 600 F. 2d at

23   199.

24       The Court finds that Plaintiff states a cognizable claim against defendants Kane and

25   Rohrandanz for depriving Plaintiff of outdoor exercise for 120 days, which is more than seventeen

26   weeks.

27   ///

28   ///

11

1        **G.      Due Process - Inmate Appeals Process and Access to Personal Property**

2        The Due Process Clause protects prisoners from being deprived of life, liberty, or property

3    without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a

4    cause of action for deprivation of procedural due process, a plaintiff must first establish the existence

5    of a protected interest.  Liberty interests may arise from the Due Process Clause itself or from state

6    law.  Hewitt v. Helms, 459 U.S. 460, 466-68 (1983).  With respect to liberty interests arising from

7    state law, the existence of a liberty interest created by prison regulations is determined by focusing

8    on the nature of the deprivation.  Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  Liberty interests

9    created by prison regulations are limited to freedom from restraint which "imposes atypical and

10   significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id. at 484.

11       *Inmate Appeals Process*

12       Plaintiff alleges that his form 602 Appeals were not properly responded to.  Defendants'

13   actions in responding to Plaintiff's appeals, alone, cannot give rise to any claims for relief under

14   section 1983 for violation of due process.  "[A prison] grievance procedure is a procedural right only,

15   it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495

16   (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez

17   v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

18   entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)

19   (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d

20   639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest requiring the

21   procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10;

22   Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).  Actions in reviewing a prisoner's

23   administrative appeal, without more, are not actionable under section 1983.  Buckley, 997 F.2d at

24   495.  Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff

25   fails to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

26       *Access to Personal Property*

27       Prisoners have a protected interest in their personal property.  Hansen v. May, 502 F.2d 728,

28   730 (9th Cir. 1974).  However, while an authorized, intentional deprivation of property is actionable

1   under the Due Process Clause, see Hudson v. Palmer, 468 U.S. 517, 532, n.13, 104 S.Ct. 3194

2   (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148 (1982));

3   Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985), "[a]n unauthorized intentional deprivation of

4   property by a state employee does not constitute a violation of the procedural requirements of the

5   Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the

6   loss is available," Hudson, 468 U.S. at 533.

7           Plaintiff alleges that he was deprived of his personal property by defendant LVN Kane, under

8   the direction of defendant Dr. Rohrandanz.  Plaintiff does not indicate that the deprivation was

9   unintentional or properly authorized.  Therefore, Plaintiff fails to state a due process claim for

10   deprivation of his property, and this claim must be dismissed.

11          If the deprivation was intentional and unauthorized, California Law provides an adequate

12   post-deprivation remedy. See Cal. Gov't Code §§ 810-895; Barnett v. Centoni, 31 F.3d 813, 816-17

13   (9th Cir. 1994).  California's Tort Claims Act requires that a tort claim against a public entity or its

14   employees be presented to the California Victim Compensation and Government Claims Board,

15   formerly known as the State Board of Control, no more than six months after the cause of action

16   accrues.  Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2006).  Presentation of a

17   written claim, and action on or rejection of the claim are conditions precedent to suit.  State v.

18   Superior Court of Kings County (Bodde), 32 Cal.4th 1234, 1245, 90 P.3d 116, 124, 13 Cal.Rptr.3d

19   534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995).

20   To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort

21   Claims Act.  State v. Superior Court, 32 Cal.4th at 1245, 90 P.3d at 124, 13 Cal.Rptr.3d at 543;

22   Mangold, 67 F.3d at 1477; Karim-Panahi, 839 F.2d at 627.

23          **H.    Access to Courts Claim**

24          Plaintiff alleges that defendants denied him access to the law library.  While Plaintiff has a

25   constitutional right to access the courts, the interferences complained of by Plaintiff must have

26   caused him to sustain an actual injury.  Christopher v. Harbury, 536 U.S. 403, 415, 122 S.Ct. 2179

27   (2002) Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174 (1996); Hebbe v. Pliler, 627 F.3d 338,

28   342 (9th Cir. 2010); Phillips v. Hust , 588 F.3d 652, 655 (9th Cir. 2009); Jones, 393 F.3d at 936.

The absence of an injury precludes an access claim, and Plaintiff's complaint is devoid of any facts suggesting any injury occurred.  Harbury, 536 U.S. at 415-16; Jones, 393 F.3d at 936.  Therefore, Plaintiff fails to state a claim for denial of access to courts based on lack of access to the law library, and this claim must be dismissed.

## I.   Retaliation

To state a claim for retaliation under the First Amendment, Plaintiff must satisfy five elements.  Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).   First, the plaintiff must allege that the retaliated-against conduct is protected.   The filing of an inmate grievance is protected conduct.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). Second, the plaintiff must claim the defendant took adverse action against the plaintiff.  Id. at 567.  The adverse action need not be an independent constitutional violation.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995).  "[T]he mere threat of harm can be an adverse action . . . ." Brodheim, 584 F.3d at 1270.  Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct.  Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.  Pratt, 65 F.3d at 808 ("timing can properly be considered as circumstantial evidence of retaliatory intent"); Murphy v. Lane, 833 F.3d 106, 108-09 (7th Cir. 1987).   Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568 (internal quotation marks and emphasis omitted). "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," Brodheim, 584 F.3d at 1269, that is "more than minimal," Rhodes, 408 F.3d at 568 n. 11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  Id. at 569.  Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).   A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were arbitrary and capricious, id., or that they were "unnecessary to the maintenance of order in the institution," Franklin v. Murphy, 745 F.2d 1221, 1230 (9th Cir. 1984).

Plaintiff makes vague allegations that defendants took action against him for attempting to "access the courts." This is not sufficient to state a claim for retaliation. Plaintiff must describe what he did, or attempted to do, to "access the courts," allege a causal connection between the adverse action and the protected conduct, allege a chilling effect or more than minimal harm, and allege that the action did not advance legitimate goals of the correctional institution. Plaintiff's allegations are not sufficient to state a claim for retaliation against any of the defendants, and this claim must be dismissed.

**J.    Eighth Amendment Medical Claim**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle, 429 U.S. at 104). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id. Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. McGuckin at 1060 (citing Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837. "'If a prison official

15

should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment. Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

"A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981) (internal citation omitted). To prevail, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (internal citations omitted).

Plaintiff alleges that his medical providers did not provide him with adequate medical care for diabetes and an earache. However, Plaintiff fails to make factual allegations demonstrating that any of the defendants consciously disregarded an excessive risk to his health or chose a medically unacceptable course of treatment under the circumstances. At most, Plaintiff describes a difference of opinion as to treatment, which is not actionable under § 1983. Therefore, Plaintiff fails to state a cognizable Eighth Amendment medical claim against any of the defendants, and this claim must be dismissed.

## K.   **Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Farmer, 511 U.S. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).

///

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates's safety." Farmer, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial 'risk of serious damage to his future health ... .'" Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." Farmer at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that defendant Cano placed him in a cell with a dangerous inmate who assaulted Plaintiff. However, Plaintiff fails to allege facts showing that defendant Cano knew of and deliberately disregarded an excessive risk to Plaintiff's safety. Therefore, Plaintiff fails to state a claim against defendant Cano for failure to protect him, and this claim must be dismissed.

**L.    Excessive Force**

Plaintiff alleges that defendant C/O Montoya physically assaulted him by maliciously and sadistically hitting him with a clenched fist, without good reason. Plaintiff also alleges that defendant C/O Mendoza assaulted Plaintiff by forcefully removing him Plaintiff from the law library, "acting with deliberate indifference to plaintiffs [*sic*] health and safety." Second Amd Cmp at 12:5-6.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v.

1  McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . .

2  . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks

3  and citations omitted).  The malicious and sadistic use of force to cause harm always violates

4  contemporary standards of decency, regardless of whether or not significant injury is evident.  Id.

5  at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force

6  standard examines de minimis uses of force, not de minimis injuries)).  However, not "every

7  malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 9.  "The Eighth

8  Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional

9  recognition de minimis uses of physical force, provided that the use of force is not of a sort

10  'repugnant to the conscience of mankind."  Id. at 9-10 (internal quotations marks and citations

11  omitted).

12      "[W]henever prison officials stand accused of using excessive physical force in violation of

13  the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied

14  in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

15  Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper

16  to evaluate the need for application of force, the relationship between that need and the amount of

17  force used, the threat reasonably perceived by the responsible officials, and any efforts made to

18  temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted).

19  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end

20  it."  Id.

21      Plaintiff states a cognizable claim for excessive force against defendant C/O Montoya, but

22  not against any of the other defendants.  Plaintiff fails to state an excessive force claim against

23  defendant C/O Mendoza, because Plaintiff has not alleged facts showing that the force was excessive

24  under the circumstances.  Plaintiff's statement that C/O Mendoza "act[ed] with deliberate

25  indifference to plaintiffs [sic] health and safety" is not sufficient to state a claim.

26      **M.    Claims for Equitable Relief and Attorney Fees**

27      In addition to money damages, Plaintiff seeks injunctive relief, declaratory relief, attorney's

28  fees, and costs of suit.  Any award of equitable relief is governed by the Prison Litigation Reform

1  Act, which provides in relevant part, "Prospective relief in any civil action with respect to prison

2  conditions shall extend no further than necessary to correct the violation of the Federal right of a

3  particular plaintiff or plaintiffs.  The court shall not grant or approve any prospective relief unless

4  the court finds that such relief is narrowly drawn, extends no further than necessary to correct the

5  violation of the Federal right, and is the least intrusive means necessary to correct the violation of

6  the Federal right."  18 U.S.C. § 3626(a)(1)(A).  Moreover, when an inmate seeks injunctive or

7  declaratory relief concerning the prison where he is incarcerated, his claims for such relief become

8  moot when he is no longer subjected to those conditions.  Dilley v. Gunn, 64 F.3d 1365, 1368 (9th

9  Cir. 1995); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991).  The events at issue in this action

10  allegedly occurred at PVSP, and Plaintiff is no longer housed at PVSP.  Based on the nature of the

11  claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief

12  and is therefore confined to seeking money damages for the violations of his federal rights.

13      With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable

14  relief, should be granted only as a matter of judicial discretion, exercised in the public interest."

15  Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948).  "Declaratory relief should

16  be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in

17  issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by

18  the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).  In the event that

19  this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a

20  finding that Plaintiff's constitutional rights were violated.  A declaration that defendant violated

21  Plaintiff's rights is unnecessary.

22      With regard to attorney's fees, "In any action or proceeding to enforce a provision of

23  section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable

24  attorney's fees . . . . "  42 U.S.C. § 1988(b).  Plaintiff's contention that he is entitled to attorney's

25  fees if he prevails is without merit.  Plaintiff is representing himself in this action.  Because Plaintiff

26  is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  Gonzales

27  v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

28

**V.      CONCLUSION AND RECOMMENDATIONS**

The Court finds that Plaintiff's Second Amended Complaint states cognizable claims under the Eighth Amendment against defendant C/O Montoya for use of excessive force against Plaintiff, and against defendants LVN Kane and Dr. Rohrandanz for deprivation of outdoor exercise. However, Plaintiff fails to state any other claims upon which relief can be granted in a section 1983 action against any of the defendants.

As discussed above, Plaintiff may not bring both the excessive force claim and the denial of exercise claim in this action, because the claims are unrelated under Rule 18(a). Plaintiff may not bring unrelated claims in a single lawsuit. "[M]ultiple claims against a single party are permissible, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits." George, 507 F.3d at 607. Plaintiff was advised of Rule 18(a) in the Court's prior screening order and was cautioned not to bring unrelated claims in the amended complaint. Despite this instruction, Plaintiff has brought unrelated claims in the Second Amended Complaint. Therefore, the Court shall select which of the unrelated claims shall proceed. Plaintiff shall be allowed to proceed only on the deprivation of exercise claim against defendants Kane and Rohrandanz. Should Plaintiff wish to proceed on the excessive force claim, or any other unrelated claim, he must file new complaints addressing those claims. The Court will begin the process to initiate service upon defendants Kane and Rohrandanz, and all other claims and defendants should be dismissed.

In this action, the Court previously granted Plaintiff an opportunity to amend the complaint, with ample guidance by the Court. The Court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez, 203 F.3d at 1127, Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1.      This case proceed only on Plaintiff's claim for deprivation of outdoor exercise against defendants Dr. Rohrandanz and LVN Kane, for money damages; and

///

1

2. All other claims and defendants be dismissed from this action based on Plaintiff's

2

failure to state a claim upon which relief may be granted or violation of Rule 18(a).

3

These findings and recommendations are submitted to the United States District Judge

4

assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty days

5

after being served with these findings and recommendations, Plaintiff may file written objections

6

with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings

7

and Recommendations."  Plaintiff is advised that failure to file objections within the specified time

8

may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

9

1991).

10

11

IT IS SO ORDERED.

12

**Dated:**   **January 4, 2013**                    **/s/ Gary S. Austin**
                                                    UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21